**MANOR CARE, INC., Appellant,**

v.

**Judith YASKIN, as Commissioner of the New Jersey Department of Environmental Protection; Ronald T. Corcory, as Assistant Director, Division of Hazardous Waste Management of the State of New Jersey; Dennis Hart, as Acting Assistant Director, Division of Hazardous Waste Management of New Jersey, Appellees.**

No. 91–5128.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 6, 1991.

Decided Dec. 4, 1991.

*Ledger Co. v. United States,* 539 F.2d 929, 932    (3d Cir.1976)).

Charles Lee Thomason, Thomas F. Quinn, Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, N.J., for appellant.

Robert J. Del Tufo, Atty. Gen. of New Jersey, Mary C. Jacobson, John Alexander MacDonald, Deputy Attys. Gen., Trenton, N.J., for appellees.

Before MANSMANN and ALITO, Circuit Judges and DIAMOND, District Judge.[*]

## OPINION OF THE COURT

ALITO, Circuit Judge:

This case presents the question whether the federal Comprehensive Environmental Resource, Compensation, and Liability Act ("CERCLA" or "Superfund"), 42 U.S.C. § 9601–9675, preempts the issuance of certain directives by the New Jersey Department of Environmental Protection under authority implicitly conferred by the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.Stat.Ann. § 58:10–23.11, 23.11a–z. These directives required a responsible party to pay for the state's share of cleanup costs at a CERCLA site. The district court held that these directives were not preempted. We will affirm.

### I.

In 1982, the United States Environmental Protection Agency ("EPA") entered into contracts with the State of New Jersey to fund the removal of hazardous substances from two New Jersey sites, the Lipari Landfill in Gloucester County and the Flor-

---

[*] Hon. Gustave Diamond, Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

ence Land Recontouring Landfill in Burlington County. In accordance with CERCLA, 42 U.S.C. § 9604(c)(3),[1] the contracts provided that the federal government would pay 90% of the cleanup cost and the state would pay the remaining 10%. Soon thereafter, the New Jersey Department of Environmental Protection ("DEP"), acting pursuant to the Spill Act, issued two directives ordering Manor Care and other responsible parties to pay to New Jersey the 10% of the cleanup cost that New Jersey was obligated to pay the federal government under the CERCLA contracts. The total sought by the two directives exceeded five million dollars.

The two directives were issued by the DEP under a provision of the Spill Act, N.J.S.A. 58:10–23.11f(a). This provision expressly authorizes the DEP to remove waste or direct a responsible party to remove the waste. The New Jersey Supreme Court, however, has held that this provision impliedly authorizes the DEP to issue administrative directives requiring the payment of money to compensate for cleanup of hazardous waste sites. *Matter of Kimber Petroleum Corp.*, 110 N.J. 69, 539 A.2d 1181, *appeal dismissed*, 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988). Under N.J.S.A. 58:10–23.11f(a), a responsible party who does not comply with such a directive may be liable for treble damages. *Id.* In order to enforce such a directive, the DEP must initiate a cost recovery action in a court of competent jurisdiction. In such an action, a responsible party may assert a good cause defense based on an objectively reasonable belief that a directive was invalid in whole or in part. *Matter of Kimber Petroleum Corp.*, 110 N.J. at 82–84, 539 A.2d at 1188–1189.

After receiving the directives, Manor Care brought suit against DEP officials in the United States District Court for the District of New Jersey under the citizen-suit provision of CERCLA, 42 U.S.C. § 9659.[2] Manor Care's complaint alleged that the issuance of the directives was "in conflict with the comprehensive federal statutory scheme for recovery of funds to remediate releases of hazardous substances into the environment." The complaint asserted that the DEP could recover its cleanup costs at the sites only through litigation in federal court under 42 U.S.C. § 9607(a)(4)(A) and 9613(f)(1). Manor Care sought declaratory and injunctive relief. The defendants moved under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

In an unpublished opinion, the district court found that nothing in the language of CERCLA or its legislative history indicates a congressional intent to preempt statutes such as the Spill Act and that there is no actual conflict between the two statutes. The court therefore granted the defendants' motion and dismissed the case. Manor Care appealed.

We have jurisdiction to hear this appeal from a final order of a district court pursuant to 28 U.S.C. § 1291. Since this appeal involves statutory construction, our standard of review is plenary. *Cassidy Podell Lynch v. Synder General Corp.*, 944 F.2d 1131, 1137 (3d Cir.1991); *United States v. Barel*, 939 F.2d 26, 31 (3d Cir.1991). Because this appeal is from a dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, we will accept as true all facts alleged in the complaint and all reasonable inferences that can be drawn

---

1. 42 U.S.C. § 9604(c)(3) provides in relevant part: "The President shall not provide any remedial actions pursuant to this section unless the State in which the release occurs first enters into a contract or cooperative agreement with the President providing assurances deemed adequate by the President that ... (C) the State will pay or assure payment of (i) 10 per centum of the costs of the remedial action, including all future maintenance...."

2. 42 U.S.C. § 9659 provides:

Except as provided in subsections (d) and (e) of this section and in section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action on his own behalf—(1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter....

from them. *Delaware Valley Citizens Council v. Davis,* 932 F.2d 256, 267 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990).

## II.

■ Federal law may preempt state law by express provision or by provisions that evidence a congressional intent to occupy a field and leave no room for supplementary state regulation. *See Fidelity Federal Savings & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Congressional intent determines whether state action is preempted by federal law. *Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–1910, 85 L.Ed.2d 206 (1985). We ascertain congressional intent by examining the statutory language and the structure and purpose of the statute. *Ingersoll–Rand Co.,* 111 S.Ct. at 482; *FMC Corp. v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990).

As the district court noted, CERCLA does not on its face preempt state laws such as the Spill Act. On the contrary, CERCLA § 114(a), 42 U.S.C. § 9614(a), unambiguously states: "Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." [3] Thus, "CERCLA expressly does not pre-empt State law." *New York v. Shore Realty,* 759 F.2d 1032, 1041 (2d Cir.1985).

■ Congress' response to the Supreme Court's decision in *Exxon v. Hunt,* 475 U.S. 355, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986), further illustrates that Congress did not intend for CERCLA to occupy the field of hazardous waste cleanup. In *Exxon v. Hunt, supra,* the Supreme Court held that a subsequently repealed provision of CERCLA, Section 114(c), 42 U.S.C. § 9614(c) (repealed 1986),[4] preempted the Spill Act insofar as that Act imposed a tax to fund cleanup costs that "might be compensated under CERCLA." This holding would not affect the present case, even if Section 114(c) had not been repealed, since the Supreme Court held that "the 10% state share is not a cost that 'may be compensated' by Superfund." 475 U.S. at 375, 106 S.Ct. at 1115. Nevertheless, Congress' response to the Supreme Court's decision is instructive.

Shortly after the Supreme Court's decision, Congress amended CERCLA and completely repealed the language in § 114(c) on which the holding in *Exxon* had been

---

3. In light of Section 114(a) of CERCLA, Manor Care's reliance on *Ingersoll–Rand v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), is misplaced. In *Ingersoll–Rand,* the Supreme Court held that the Employee Retirement Income Security Act of 1974 [ERISA] preempted a state common law claim that an employer had discharged an employee with the unlawful purpose of preventing the employee from receiving benefits under a plan covered by ERISA. The Court based its decision on Section 514(a) of ERISA, 29 U.S.C. § 1144(a), which states: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede all and any State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). Noting that this language was deliberately expansive, the Court found that Congress intended that ERISA preempt all state laws which in any way relate to ERISA-covered benefit plans. *Ingersoll–Rand,* 111 S.Ct. at 482–483. A comparison of ERISA § 514(a) and CERCLA § 114(a) unmistakably shows that the intent of Congress for each statute with respect to preemption of state laws was markedly different.

4. Section 114(c), 42 U.S.C. § 9614(c) (repealed 1986), provided:

   Except as provided in this chapter, no person may be required to contribute to any fund, the purpose of which is to pay compensation for claims for any costs of response or damages or claims *which may be compensated under this subchapter.* Nothing in this section shall preclude any State from using general revenues for such a fund, or from imposing a tax or fee upon any person or upon any substance in order to finance the purchase or prepositioning of hazardous substance response equipment or other preparations for the response to a release of hazardous substances which affects such State.

based. Pub.L. No. 99–499, 100 Stat. 1613 (1986). The Senate Report, which was written prior to the Supreme Court's decision, observed:

The reported bill strikes section 114(c) of the Act to clarify that States are not preempted from imposing taxes for purposes already covered by CERCLA. . . .

The primary effect of the amendment will be to remove a potential barrier to the creation of State superfund programs. The amendment may result in an increase in the number and pace of hazardous substance response actions undertaken or partially funded by States, since States will be able to raise funds to assist such hazardous substance response.

S.Rep. No. 11, 99th Cong., 1st Sess. at 59–60 (1985). *See also* H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1 at 65 (1985) (Congressional Budget Office Cost Estimate), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2847; H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1 at 83–84 (1985) (Energy and Commerce Committee), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2865–2866; Statement of Lee M. Thomas, Environmental Protection Agency, H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1 at 123, 125 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2905, 2907; Separate and Dissenting Views–Superfund Amendments of 1985, H.R.Rep. No. 253, 99th Cong., 1st Sess. pt. 1 at 257, 267 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2931, 2942; H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 5 at 27 (1985) (Public Works and Transportation Committee), *reprinted in* 1986 U.S.C.C.A.N. 2835, 3124, 3150; H.R.Conf.Rep. No. 962, 99th Cong., 1st Sess., pt. 5 at 183, 225 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 3276, 3318.

Thus, the language of § 114(a), the repeal of the original language of § 114(c),

and the legislative history of that repeal demonstrate clearly that Congress did not intend for CERCLA to occupy the field or to prevent the states from enacting laws to supplement federal measures relating to the cleanup of hazardous wastes.

### III.

■ Manor Care argues that whatever Congress' general intention might have been with respect to state hazardous waste cleanup schemes that supplement and complement CERCLA, certain CERCLA provisions conflict directly with the application of the Spill Act in the instant case. Of course, any state law that actually conflicts with federal law is preempted. *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Marketing & Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984). Here, however, the challenged DEP directives do not conflict with, but instead supplement, the CERCLA provisions on which Manor Care relies.

■ First, Manor Care contends that the DEP directives conflict with CERCLA § 106(a), 42 U.S.C. § 9606(a), which authorizes the Attorney General to seek relief in federal court to abate imminent and substantial damage resulting from an actual or threatened release of a hazardous substance from a facility.[5] Manor Care urges that under this Section only the federal government may obtain orders compelling hazardous waste cleanups and that therefore the DEP directives usurped exclusively federal authority.

Manor Care's argument misconstrues Section 106(a). While Section 106(a) does not authorize a state to seek relief in federal court to abate a covered release of a hazardous substance, Section 106(a) does not limit state remedies under state law.

---

5. Section 106(a), 42 U.S.C. § 9606(a) provides:

In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to

abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

Nor does Section 106(a) apply to state efforts to recover cleanup costs. Thus, Section 106(a) does not preclude state orders seeking payment for cleanup costs under state law.

The present case is clearly distinguishable from *Colorado v. Idarado Mining Co.*, 916 F.2d 1486 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991), on which Manor Care relies. In that case, the Tenth Circuit held that CERCLA Section 121(e)(2), 42 U.S.C. § 9621(e)(2), did not authorize a state to obtain an injunction requiring compliance with a remedial plan proposed by the state. Instead, the court held (916 F.2d at 1494) that Section 121(e)(2) "allows states to enforce requirements of remedial actions embodied in consent decrees under CERCLA ..." The court also observed (916 F.2d at 1493) that the injunctive remedy provided by CERCLA Section 106 was not available to a state. Thus, the Tenth Circuit's decision simply shows that CERCLA does not confer upon states the authority to obtain certain injunctive relief. The decision says nothing whatsoever about the states' ability to obtain cleanup costs under their own laws.

Second, Manor Care argues that the DEP directives conflict with CERCLA Sections 107 and 113, 42 U.S.C. § 9607 and 9613. Section 107 imposes liability upon certain parties for federal or state cleanup costs that are "not inconsistent with the national contingency plan." [6] Section 113 grants the United States district courts exclusive jurisdiction for civil suits arising under CERCLA. Manor Care contends that if New Jersey is to recover the 10% it must pay the federal government under the CERCLA contracts, it must do so pursuant to these CERCLA liability and remedy provisions, not pursuant to the Spill Act.

Manor Care's argument is inconsistent with Congress' clear and strong intent. As discussed above, Congress did not intend for CERCLA remedies to preempt complementary state remedies. Moreover, Manor Care's argument neglects to consider Section 114(b), 42 U.S.C. § 9614(b), which prohibits a person from receiving compensation for the same removal costs, damages, or claims under both CERCLA and another state or federal law.[7] Such a provision would be unnecessary and inexplicable if, as Manor Care maintains, costs that may be recovered under CERCLA may not be recovered under state law. In other words, if CERCLA's remedies preempted state remedies for recovering costs of hazardous waste cleanups, § 114(b) would make no sense at all. Accordingly, we find no actual conflict between the DEP directives at issue in this case and the CERCLA provisions on which Manor Care relies.[8]

## IV.

■ Finally, Manor Care argues that the district court considered matters outside of the pleading, i.e., the language of the CERCLA contracts for the two sites in question, and therefore erred by not treating the motion to dismiss under Fed. R.Civ.P. 12(b)(6) as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). We disagree. While it is true that the district court referred in a single footnote to language from the CERCLA contracts as "further support" for its finding that CERCLA does not preempt the Spill Act, the court's decision is not in any way dependent on that supporting language. Fur-

---

6. The national contingency plan is the federal plan for cleanup of hazardous substances. *See* 42 U.S.C. § 9611(a)(2); 40 C.F.R. pt. 300.

7. Section 114(b), 42 U.S.C. § 9614(b), states:
   Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Fed-

eral or State law shall be precluded from recovering compensation for the same removal costs or damages or claims as provided in this chapter.

8. This case is therefore unlike *United States v. Akzo Coatings of America Inc.*, 719 F.Supp. 571, 579–80 (E.D.Mich.1989), in which the court held that CERCLA preempted state law claims that would have required responsible parties to implement remedies that were inconsistent with the remedies under a CERCLA consent decree.

thermore, a state's obligations under a CERCLA contract are largely determined by statute. 42 U.S.C. § 9604(c)(3). The district court opinion turned, as it should have, on the express language and legislative history of CERCLA and on the application of CERCLA and the Spill Act to the facts alleged in the complaint. If the district court's passing reference to the contractual language was mistaken, it was certainly harmless.

## V.

In summary, we hold that the district court properly interpreted CERCLA as not preempting the Spill Act. We will therefore affirm the order of the district court.