CITY OF MERCED, et al., Plaintiffs,

v.

R.A. FIELDS, et al., Defendants.

No. CV–F–92–5627 REC DLB.

United States District Court,
E.D. California.

March 12, 1998.

Dennis Ivan Floyd, City Atty's Office, Merced, CA, for Plaintiffs.

Steven E. Paganetti, Wild Carter and Tipton, Fresno, CA, for Alan Fields.

Terry L. Allen, David P. Lanferman, Lanferman Fisher and Hashimoto, Fremont, CA, for Alan Kirby.

Terry L. Allen, Allen, Polgar, Proietti and Fagalde, Merced, CA, for Phyllis Kirby, Catherine Mitchell, Anne Rahilly, Steve Carlisle.

Jan Adam Greben, Greben and Associates, Sacramento, CA, for G Street One Hour Martinizing, R Street Martinizing, Team Enterprises Inc.

Dale Ikeda, Dowling Aaron and Keeler, Fresno, CA, for C and H Development Co.

Timothy Jones, Wilkins Drolshagen and Czeshinski, Fresno, CA, for Estate of Roy M. Burnett.

Sunshine Cleaners, Merced, CA, pro se.

Vinod N. Patel, Merced, CA, pro se.

Glenn J. Holder, Baker Manock and Jensen, Fresno, CA, for Beverley A. Hansen.

## ORDER RE MOTIONS TO DISMISS

COYLE, District Judge.

### I. *Introduction*

On October 20, 1997, this court heard Vulcan Materials Company ("Vulcan"), Dow Chemical Company ("Dow"), and PPG Industries, Inc.'s ("PPG") motion to dismiss R.A. Fields, Inc.'s ("Merced Laundry") third-party CERCLA contribution/state-law equitable-indemnification action. Other third parties joined this motion on both sides, and some have filed what are in effect separate motions to dismiss. For the following reasons, this court grants the motions in part and denies them in part.

### II. *Background*

The City and the Redevelopment Agency of Merced (collectively, the "City") discovered in 1986 that tetrachloroethylene ("PCE") was contaminating its groundwater. In April of 1987, the City hired an environmental consulting firm to examine its water wells and make recommendations for possible remediation efforts. On September 11, 1987, the Regional Water Quality Control Board ("RWQCB") was notified of the PCE groundwater contamination. In August of 1988, the RWQCB found that the groundwater contamination centered around Merced Laundry and other dry cleaners. In November of 1988, the RWQCB issued orders to all active dry cleaners in the City to begin investigation of the lateral and vertical extent of the suspected contamination at each facility.

In July of 1990, assistance was sought from the Environmental Protection Agency to evaluate the contamination. The EPA conducted a preliminary assessment in January of 1991. On April 26, 1991, the EPA issued Administrative Order No. 91–10, pursuant to 42 U.S.C. § 9606(a), directing Merced Laundry, as well as several individual defendants who are no longer part of this lawsuit, to assess and clean up the PCE soil and groundwater contamination in and around what has become known as the Merced Laundry Site. The City has since taken charge of much of the cleanup effort.

The City filed a complaint against Merced Laundry and other dry cleaners on September 15, 1992, for damages based on causes of action for response costs under CERCLA Section 107, negligence, continuing trespass, continuing nuisance, interference with prospective economic advantage, and equitable and declaratory relief under California Code of Civil Procedure § 1060.[1] The City also filed claims against Roy M. Burnett ("Burnett") for breach of implied warranty of land-sale agreement and fraudulent concealment. This court granted summary judgment to Burnett and he is no longer part of this action. *See City of Merced v. R.A. Fields,* No. CV–92–5627 REC DLB (E.D.Cal. May 24, 1996) (order granting cross-defendant Burnett's motion for summary judgment). As part of the summary-judgment order, this court held that the city, as a Potentially Responsible Party ("PRP") under CERCLA, was not entitled to maintain an action for Section 107 joint-and-several liability, but could only maintain an action for Section 113 contribution. The City then filed a first amended complaint against Merced Laundry and other dry cleaners which contained a claim under Section 113 of CERCLA, common-law claims for negligence, continuing trespass, continuing nuisance, and equitable and declaratory relief under California Civil Procedure Code Section 1060.[2]

Merced Laundry filed a third-party complaint on January 25, 1993, against several dry cleaners and 200 Roe Defendants. The complaint asked for declaratory relief for contribution under CERCLA and equitable indemnity for the City's state-law claims.

---

1. California Civil Procedure Code § 1060 creates a cause of action for declaratory judgment in California.

2. The claim for intentional interference with economic advantage has been dismissed.

According to Merced Laundry, later discovery disclosed the names of several third parties, including the third parties who filed or joined in the present motion. On May 14, 1997, Merced Laundry moved the magistrate judge for an order allowing Merced Laundry to substitute these new parties for Roe Defendants. The magistrate judge granted the motion on June 3, 1997. On July 7, 1997, Merced Laundry filed an amended third-party complaint for indemnity, contribution, and declaratory judgment naming Vulcan, Dow, PPG, and the other third parties who have joined in the motion to dismiss.[3]

On March 16, 1993, the magistrate judge issued an order that provided in relevant part: "all parties to this lawsuit, whether currently served, named, unserved, or unnamed, shall be deemed to have filed a counterclaim and cross claim in a form similar to that attached hereto as Exhibit 'A' as against all other current or future parties to this action...." *City of Merced v. R.A. Fields*, No. CV–F–92–5627 REC DLB (E.D.Cal. March 16, 1993) (Order regarding counterclaims, cross claims, and answers thereto). Exhibit "A" will hereinafter be referred to as the "Model Complaint." The Model Complaint contained one cause of action for declaratory relief for contribution under CERCLA and a cause of action for declaratory relief for equitable indemnity for state-law claims. The terms of the order make it clear that all parties to this motion are deemed to have filed this Model Complaint against each other.

Because of the magistrate judge's order, it makes little logical sense to refer to one party as a third-party defendant and to another as a third-party plaintiff. The effect of the order is that each party to this action is both a third-party plaintiff *and* a third-party defendant. Therefore, the court will distinguish between the two groups on opposite sides of this motion by referring to one group as the Movants and the other as the Opposition.

The Movants are Vulcan, Dow, and PPG, who jointly filed the motion to dismiss, and six additional third parties who filed documents indicating they desired to join the motion: (1) Echco Sales & Equipment Co. ("Echco"); (2) Occidental Holding Corp. ("Occidental"); (3) Van Waters & Rogers ("Van Waters"); (4) Technichem Engineering LTD ("Technichem");[4] (5) Workroom Supply, Inc. ("Workroom"); and (6) Lamoure's Cleaners, Inc. ("Lamoure's"). Some of these six made additional arguments in their joinder papers. The court will note in its opinion where a certain argument is specific to a certain party.

Merced Laundry filed the initial opposition to Movant's motion. Five additional groups of third parties joined Merced Laundry's opposition motion, and this court refers collectively to these and Merced Laundry as the Opposition. Grouped by representation, the five are: (1) C & H Development Co. ("C & H"); (2) John Roth Chevrolet, Isenberg Motors, James Mitchell, and Kathleen Mitchell (collectively "Roth"); (3) Team Enterprises, Inc., "G" Street One Hour Martinizing, and "R" Street One Hour Martinizing (collectively "Team"); (4) Merced County; and (5) B.A.

---

**3.** Merced Laundry also brought the amended third-party complaint against Stauffer Chemical, Goss–Jewett Co., Kleen–Rite Company, and Detrex Corporation, but these parties did not join in the present motion.

**4.** Echco and Technichem were initially brought into this action by David Norfles and Parkway Cleaners (collectively "Parkway") on June 30, 1993. Parkway stipulated to dismiss Technichem and Echco, and the court entered orders giving every litigant the opportunity to object to the dismissal. The court entered orders confirming the dismissal of Echco and Technichem, without prejudice, on April 17, 1994, and July 1, 1994, respectively, having received no objections. Technichem and Echco argued that they should be dismissed from the action, as evidence demonstrates that they could have no liability in this case, which is why they were dismissed previously. When questioned at oral argument, the attorney for Merced Laundry, who had brought Echco and Technichem back into the case, asserted that certain deposition testimony contradicted the referred-to evidence. The court is disinclined to make its decision on the basis of the limited record it now possesses as to these parties. If the evidence of Technichem and Echco's involvement in this matter is truly as sparse as they say, then these parties can move for summary judgment at a later time.

and Helen Hansen (collectively, the "Hansens").[5]

## III. *Analysis*

### A. *Motion To Dismiss*

Because all parties involved in these motions are deemed to have filed an answer by virtue of the magistrate judge's order discussed above, the court will convert the Rule 12(b)(6) motions to motions for judgment on the pleadings under Rule 12(c). "The standard applied on a Rule 12(c) motion is essentially the same as that applied on Rule 12(b)(6) motions. . . ." William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL ¶ 9:335 (The Rutter Group 1997); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989) (applying essentially the same standard as Rule 12(b)(6) motion). The court therefore relies on cases interpreting Rule 12(b)(6) to guide its analysis of the Rule 12(c) motions.

The motion to dismiss for failure to state a claim is rarely granted—it is possible only in "extraordinary" cases. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981); Schwarzer, et al., supra, at ¶ 9:210.

The complaint must be construed in the light most favorable to the plaintiff. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In reviewing an FRCP 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *See NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898

(9th Cir.1986). This is so no matter how improbable the facts alleged. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The question of plaintiff's ability to prove his or her allegations is generally of no concern in ruling on an FRCP 12(b)(6) motion. *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996); Schwarzer, et al., supra, at ¶ 9:218.

Courts need also assume that all general allegations "embrace whatever specific facts might be necessary to support them," *see Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517, 521 (9th Cir.1994), but need not accept as true "conclusory allegations," *see Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

### B. *CERCLA Contribution Claims*

#### 1. *"Manufacturer's Defense"*

Vulcan, Dow, PPG, Echco, Occidental, Van Waters, Workroom, and Technichem (for the purposes of this argument, the "Manufacturers") argue that they do not fall within the four classes of CERCLA-liable parties found in 42 U.S.C. § 9607(a), because they did nothing more than manufacture and sell a useful product.[6]

CERCLA imposes liability on specific classes of defendants for response costs. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), lists those classes: (1) generators of waste; (2) transporters of waste; (3) past and present owners and operators of waste sites;[7] and (4) those who dispose of or arrange for the disposal of hazardous waste ("arrangers"). *See* 42 U.S.C. § 9607(a)(1)–(4).

If a party is not within the class of those liable under Section 107(a), that party is not liable for contribution under Section 113(f). This is because Section 107 creates the Section 113(f) right of contribution. *See*

---

5. Many joinders have been filed in this matter, making a complex motion even more so. For the sake of simplicity and fairness, the court will deem every argument made by any Movant as if it had been made by all and against each member of the Opposition, unless the argument clearly would not apply, or a particular Movant has declined to join a particular argument.

6. Technichem is actually a seller of recycled PCE. For the purposes of this argument, a seller of recycled PCE is no different than a manufacturer.

7. There is no allegation in this case that any of the Manufacturers are past or present owners or operators of any waste site involved in this lawsuit.

*Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, 1301–1302 (9th Cir. 1997).

The Ninth Circuit has held that a manufacturer who does nothing more than sell a useful, albeit hazardous product to an end user has neither generated, transported, nor arranged for the disposal of hazardous waste for the purposes of 42 U.S.C. § 9607(a). *See 3550 Stevens Creek Associates v. Barclays Bank of California,* 915 F.2d 1355, 1361–1362 (9th Cir.1990) (seller of asbestos for building construction not a CERCLA-liable party). Several other Circuit Courts of Appeals have adopted this reasoning. *See e.g., G.J. Leasing Co. v. Union Electric Co.,* 54 F.3d 379, 384–386 (7th Cir.1995); *General Electric Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 287 (2d Cir.1992); *Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313, 1319 (11th Cir.1990); *Dayton Indep. School Dist. v. U.S. Mineral Products Co.,* 906 F.2d 1059, 1065 (5th Cir.1990).

It appears therefore that if indeed the Manufacturers have done nothing more than sell a useful chemical to the Opposition or other users, then the Opposition cannot state a claim against them.

However, the opposition claim that further discovery will show that the Manufacturers' role in this lawsuit went beyond supplying PCE to end users. Specifically, the Opposition argue that discovery will show that the Manufacturers have engaged in acts that *would* subject them to arranger liability under CERCLA § 9607(a). *See e.g., Cadillac Fairview/California, Inc. v. United States,* 41 F.3d 562, 566 (9th Cir.1994) (arranger liability could exist where sale of hazardous material was more properly viewed as an arrangement for treatment of hazardous waste than the sale of a useful product).

The court finds that this issue is not properly resolved on a motion to dismiss, simply because the court does not know for certain what the Manufacturers actually did or did not do. If further discovery turns up more information, the matter can be addressed at that time.

## 2. Impossibility of Third–Party Contribution Action

All Movants argue that the opposition could never maintain an action for contribution against them, because each member of the Opposition is no more than a defendant in the City's contribution action; Movants argue that only the City can bring a contribution action against them.

The Movants are partly correct. As a matter of law, no member of the Opposition may bring an action for CERCLA contribution against the Movants seeking to recover any amount that Opposition member may have to pay to the City. However, Merced Laundry may continue to seek contribution against the Movants to recover any amount in excess of its pro rata share of costs attributable to responding to the EPA's 1991 Administrative Order. For brevity's sake, the first type of costs will be referred to as the "City Response Costs" and the second type as the "Administrative Order Response Costs."

The court will dismiss the Opposition's claims as to the City Response Costs based on the following reasoning. A PRP cannot bring a joint-and-several-liability cost-recovery action against another PRP; rather, a PRP is limited to an action for contribution. *See Pinal Creek Group,* 118 F.3d at 1301. Defendants in a contribution action are liable for no more than their several, equitable share of cleanup costs. *See id.* at 1303. Only one who has incurred more than its fair-and-several share of cleanup liability may maintain an action for contribution. *See United Technologies Corp. v. Browning–Ferris Industries, Inc.,* 33 F.3d 96, 103 (1st Cir.1994). Therefore, as a matter of logic, contribution defendants, as well as the parties brought in by the contribution defendants, who can by definition owe to contribution plaintiffs no more than their fair-and-several share of cleanup liability, cannot themselves maintain contribution actions of their own.

Because this argument is fairly abstract, the court provides examples to illustrate the point.

Example 1: The Government sues PRP X under CERCLA § 107, holding X jointly and severally liable for cleanup costs of Site. X sues Y and Z pursuant to CERCLA Section 113(f). Y and Z, as contribution defendants, are liable to X only for their fair-and-several share of the cleanup. Y and Z, being contribution defendants, thus cannot sue A, B, or C pursuant to Section 113(f). X *can* maintain such an action, because X is jointly and severally liable to the Government.

Example 2: X, who is not a PRP, begins cleanup of Site.[8] X sues Y and Z pursuant to CERCLA § 107, holding Y and Z jointly and severally liable. Y and Z then sue contribution defendants A, B, and C, who are liable to Y and Z for their fair-and-several share of cleanup costs. However, neither A, B, nor C could bring CERCLA contribution actions against D, E, or F. Y and Z could bring such actions, being jointly and severally liable to X.

Example 3: To forestall a suit by the Government, PRP X voluntarily begins cleanup of Site and incurs costs greater than X's equitable share. X, being a PRP, brings a contribution action against Y and Z. Y and Z, being contribution defendants, are not liable to X for more than their fair-and-several share of the cleanup costs. Y and Z therefore cannot bring contribution actions against A, B, or C. However, because X is a contribution plaintiff, and not a contribution defendant, X can.

The facts of this case as to the City Response Costs most resemble Example 3. The City, a PRP,[9] sued Merced Laundry and others, because the City believed that it would incur more than its equitable share of the cleanup costs. Merced Laundry and other members of the Opposition are therefore contribution defendants, or defendants brought in by contribution defendants, or perhaps occupy a link in the chain even *further* removed from the City. By definition, Merced Laundry and every other cross-defendant or cross-plaintiff can be liable to the City for no more than their fair-and-several share of cleanup costs. Therefore, neither Merced Laundry nor any party to this action—other than the City—may maintain a Section 113 contribution action in this matter.

■ The foregoing reasoning does *not* apply to Merced Laundry's Administrative Order Response Costs, because in effect, Merced Laundry is jointly and severally liable for those costs. The EPA ordered Merced Laundry to clean up the Merced Laundry Site. Therefore, Merced Laundry is not a contribution defendant as to those costs. Merced Laundry can thus maintain a contribution action to recover the Administrative Order Response Costs in excess of its equitable share.

Therefore, the Opposition's CERCLA contribution claims to recover the City Response Costs are dismissed as against the Movants, without leave to amend. Merced Laundry's claim for the Administrative Order Response Costs remains viable.[10]

8. This is admittedly a rare circumstance. X would have no incentive to clean up Site unless X owned Site. And, to avoid becoming a PRP, X would have to prove himself entitled to some absolute defense to CERCLA, such as the "innocent owner" defense. *See generally ABB Industrial Systems, Inc. v. Prime Technology, Inc.,* 120 F.3d 351, 358–359 (2d Cir.1997).

9. In an earlier order in this case, this court held that the City was a PRP who could maintain only a Section 113 contribution action. *See City of Merced v. R.A. Fields,* No. CV–92–5627 REC DLB (E.D.Cal. May 24, 1996) (order granting cross-defendant Burnett's motion for summary judgment).

10. At the hearing on this matter, counsel for one member of the Opposition raised some concerns regarding "orphan shares." Orphan shares are shares of CERCLA liability that belong to parties that are either insolvent or cannot be located or identified. *See Pinal Creek Group,* 118 F.3d at 1303. Counsel argued that this court's decision regarding City Response Costs could lead to a situation where one PRP might only sue five out of twenty PRPs, and the court would then have to allocate the shares of the 15 PRPs not sued to the five PRPs who were sued, as orphan shares. In such cases, orphan-share liability could be greater than an individual PRP's several, equitable share of the liability.

The court first notes that it is an open question whether the shares of PRPs not sued could be considered orphan shares at all. Moreover, such a tactic would certainly not be in the interest of the PRP who made the decision to sue, because some of that excess orphan-share liability would be allocated to the suing PRP. The suing PRP would thus be encouraged to sue as many other PRPs as it could. Finally, even if the court's

### 3. *Statute Of Limitations*

All Movants argue that the Opposition's contribution actions are barred by the three-year statute of limitations for CERCLA contribution actions. *See* 42 U.S.C. § 9613(g). The argument is as follows: the three-year statute of limitations for contribution claims began to run in 1991, when the EPA issued its Administrative Order against Merced Laundry, and expired well before July 5, 1997, when Merced Laundry served the Movants with an amended complaint. Because this court has dismissed most of the Opposition's CERCLA contribution claims, *see* supra, the court applies this statute-of-limitations argument to Merced Laundry's claim for Administrative Order Response Costs. For reasons that follow, the argument does not require the court to dismiss Merced Laundry's claim for contribution.

The statute of limitations for an initial action for the recovery of remedial response costs under Section 107(a) of CERCLA is six years. *See* 42 U.S.C. § 9613(g)(2)(B). The triggering event is the beginning of physical on-site construction. *See id.* The statute for a Section 113 contribution action, however, is three years. *See id.* at § 9613(g). There are three alternative triggering events: (1) the date of judgment in any CERCLA action; (2) the date of an administrative order relating to either a de minimus or cost-recovery settlement; or (3) entry of a judicially approved settlement with respect to such costs or damages. *See id.* at (A)–(B).

Where, as in this matter, there is no Section 107(a) action, and there has also been neither a judgment, an administrative order relating to a de minimus or cost-recovery settlement, nor a judicially approved settlement, the Circuit Courts of Appeals are split on the appropriate statute of limitations to apply. The Ninth Circuit has not yet ruled on this question. *See Pinal Creek Group,* 118 F.3d at 1305 (the court directly faced with the issue must determine whether Section 9613(g)(2), 9613(g)(3), or some other statute should apply). Courts have taken three different approaches to this issue, and various parties to this motion have advocated each of them.

The first approach is to read the plain language of Section 113(g)(3) as establishing *no* statute of limitations for this particular situation. *See Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.,* 107 F.3d 1235, 1241 (7th Cir.1997) (dicta).

The second approach is to use the six-year statute of limitations in Section 113(g)(2). This approach is found in the Tenth Circuit's decision in *Sun Co., Inc. (R & M) v. Browning–Ferris, Inc.,* 124 F.3d 1187 (10th Cir. 1997). The Tenth Circuit's rationale is as follows. A Section 113(f) contribution action is an action under Section 107. *See id.* at 1191; *accord Pinal Creek Group,* 118 F.3d at 1302 (Section 107 creates cause of action, Section 113 regulates action). Therefore, by definition, contribution actions are cost-recovery actions. *See Sun Co., Inc. (R & M),* 124 F.3d at 1192. Therefore, a contribution action, if there has been no prior Section 107(a) cost-recovery action, is an "initial action for recovery of the costs referred to in section 9607 of this title." *Id., quoting* 42 U.S.C. § 9613(g)(2) (creating six-year statute of limitations for "initial actions" under "section 9607 of this title").

The third approach is to use the three-year statute of limitations found in Section 113(g)(3), but import an additional triggering event from federal common law. The district court decision in *Sun Co., Inc. (R & M)* typifies this approach. *See Sun Co., Inc. (R & M) v. Browning–Ferris, Inc.,* 919 F.Supp. 1523 (N.D.Okl.1996), *rev'd in pertinent part,* 124 F.3d 1187 (10th Cir.1997). In that decision, the district court applied the three-year statute of limitations for contribution actions, but imported a triggering event from a Third Circuit case holding that a (non-CERCLA) contribution action accrues when a party seeking contribution has paid more than his

holding does create the possibility of inequitable orphan-share allocation, the court must bow to logic and precedent on this issue. The dismissal of the Opposition's contribution claims for City

Response Costs is compelled by the federal common law of CERCLA. To the extent that this common law creates an inequity, it is for Congress or a higher court to address.

fair share of a common liability. *See id.* at 1531.[11]

The court is convinced that either the second or the third approach should apply, but finds that it need not decide between them in ruling on this motion. To apply either one of these rules, the court would have to know either when Merced Laundry began remediation or when, if ever, Merced Laundry has paid more than its pro-rata share of cleanup costs, pursuant to the 1991 Administrative Order. The issue is thus more properly decided on a motion for summary judgment.

#### 4. *Payment Of Superfund Tax*

■ Vulcan, Dow, and PPG argue that because the chemical industry is already subject to an environmental tax under the Superfund Law, it would be unfair to hold them CERCLA-liable for selling useful products.

As discussed above, a manufacturer who does nothing more than sell useful products does not fit into the four classes of CERCLA-liable parties under 42 U.S.C. § 9607(a). The court, however, cannot accept the argument that payment of an environmental tax would absolve Vulcan, Dow, or PPG from conduct that would place them into one of the four CERCLA-liable classes. First, there is no support in the statute for such an idea. Second, the argument could lead to unfair results—a defendant's CERCLA liability at a given site could be many times the amount of tax paid by the defendant over the years. This argument therefore does not require the court to dismiss the remaining CERCLA claims against Movants.

#### 5. *Failure To Comply With Rule 8(a)*

■ Movants argue that Merced Laundry's complaint fails to set forth sufficient facts to demonstrate entitlement to relief under FRCP 8(a). Merced Laundry's complaint alleges that "each of the Roe cross defendants is in some manner responsible for the injuries and actions alleged herein." [12]

A CERCLA complaint need not allege the particular manner in which a release of hazardous materials has occurred in order to make out a prima-facie claim under section 107(a) of CERCLA. *See Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1153 (9th Cir.1989). Therefore, this court holds Merced Laundry's complaint sufficiently pleads a CERCLA cause of action.

#### C. State – Law Equitable – Indemnity Claims

Because of the Model Complaint, all parties to this action have claims for equitable indemnity against each other for amounts they may have to pay to satisfy the City's state-law claims. The City's state-law claims are for negligence, continuing nuisance, and continuing trespass.

##### 1. *CERCLA v. State Law*

Two of Movants' arguments why this court should dismiss the equitable-indemnity claims against them are based on CERCLA and the cases interpreting it.

■ The first argument is as follows. An equitable-indemnity claim requires the equitable-indemnity plaintiff to be jointly and severally liable with the equitable-indemnity defendant. *See Cicone v. URS Corp.,* 183 Cal.App.3d 194, 212, 227 Cal.Rptr. 887 (1986). *Pinal Creek Group* and other cases, discussed supra, establish that CERCLA defendants are only *severally* liable when the initial plaintiff is a PRP. Therefore, an equitable-indemnity claim cannot exist between the Movants and the Opposition.

This argument must fail because it incorrectly assumes that the federal common law that governs and interprets CERCLA also applies to state-law claims. This is not the case, as 42 U.S.C. § 9652(d) demonstrates:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.

---

**11.** The California standard is similar. In California, a right of contribution accrues when a money judgment has been rendered and the party seeking contribution has paid more than his fair share of liability. *See* Cal.Civ.Proc.Code § 875(c) (West 1980 & Supp.1998).

**12.** Only Merced Laundry's complaint contains this language.

In this case, each party is potentially severally liable to the City under CERCIA because the City is itself a PRP, and liability among PRPs is several. *See* discussion supra. This result is required by CERCLA and the federal common law interpreting the statute. However, Section 9652(d) of CERCLA makes perfectly clear that CERCLA is not intended to alter in any way the liabilities of any person under state law with respect to releases of hazardous substances. Therefore, this court must address the question of whether Movants and the Opposition are jointly and severally liable to the City, or are merely severally liable, referencing California law.[13]

In California, joint, concurrent, or successive tortfeasors generally have *joint* liability for economic damages. *See* Cal.Civ.Code § 1431.2 (West Supp.1998). Economic damages are objectively verifiable losses. *See id.* In a negligence claim under California law, liability among joint defendants is joint and several, even if the plaintiff is partially at fault. *See American Motorcycle Ass'n v. Superior Court,* 20 Cal.3d 578, 590, 146 Cal. Rptr. 182, 578 P.2d 899 (1978). The damages are simply diminished in proportion to the amount of negligence attributable to the person recovering. *See id.* These comparative principles also apply to negligence-based nuisance actions. *See Tint v. Sanborn,* 211 Cal.App.3d 1225, 1229, 259 Cal.Rptr. 902 (1989).

In short, there is nothing before the court to indicate that under California law, Movants and the Opposition would not be jointly and severally liable to the City as to the state-law causes of action. Therefore, the court holds that while liability for the CERCLA claims is several, liability of all parties to the City under state-law theories is joint and several. Movants' first argument thus does not require this court to dismiss the state-law equitable-indemnity claims.

Movants' second argument is that it is not possible to recover CERCLA response costs under a state-law theory. This argument also fails, because CERCLA does not preempt state-law causes of action that concern cleanup of hazardous materials. *See* 42 U.S.C. § 9652(d), supra; *Stanton Road Associates v. Lohrey Enterprises,* 984 F.2d 1015, 1021–1022 (9th Cir.1993). Moreover, CERCLA expressly prohibits a plaintiff from winning a double recovery of cost-of-repair damages under both CERCLA and state law. *See* 42 U.S.C. § 9614(b). The express prohibition against double recovery for removal costs would be unnecessary and inexplicable if costs that may be recovered under CERCLA may not be recovered under state law. *See Manor Care, Inc. v. Yaskin,* 950 F.2d 122, 127 (3d Cir.1991), *cited with approval in Stanton Road Associates,* supra. Movants' second argument therefore does not require this court to dismiss the equitable-indemnification claims.

### 2. *Subject–Matter Jurisdiction*

Movants argue that if this court dismisses the CERCLA contribution claims, the court must also dismiss the state-law equitable-indemnification claims because the court will no longer have subject-matter jurisdiction over those claims.

First, as noted above, the court will not dismiss Merced Laundry's claims for Administrative Order Response Costs.

Second, this court has discretion to exercise supplemental jurisdiction over state-law claims even if the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The court believes that it is better to resolve this lawsuit in a single forum, as complex a task as that may be. Therefore, even if the court were to dismiss all the CERCLA claims against Movants, the court would exercise its discretion to retain supplemental jurisdiction over the state-law claims.

### 3. *Right Of Equitable Indemnity For Intentional Acts*

Lamoure's argues that this court should dismiss all of the state-law equitable-indemnity claims against it except for the common-law negligence claims, because there is no right of indemnification for intentional con-

---

**13.** *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651 (N.D.Ill.1988), on which Movants rely, is not to the contrary. The *Hines* court also analyzed the nature of cross-plaintiff's and cross-defendants' liability referencing state law. *See id.* at 658.

duct under California law. According to Lamoure's, continuing nuisance and continuing trespass are intentional torts.

■■ Lamoure's is correct in that there is no *statutory* right of contribution or indemnification between intentional tortfeasors in California. However, there *is* a right of equitable indemnification between joint intentional tortfeasors. *See Baird v. Jones*, 21 Cal.App.4th 684, 686, 27 Cal.Rptr.2d 232 (1993). Therefore, Lamoure's argument is without merit.[14]

### D.  *Federal Rule Of Civil Procedure 4(m)*

Finally, Movants Workroom and Technichem argue that Merced Laundry's complaint must be dismissed against them because Merced Laundry failed to comply with Rule 4(m) of the Federal Rules of Civil Procedure. Rule 4(m) provides in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Merced Laundry originally filed its third-party complaint on January 25, 1993, but did not serve its amended complaint on Workroom and Technichem until July of 1997. Accordingly, Workroom and Technichem argue, the 120 days of Rule 4(m) have long expired, and the claim should be dismissed.

The court's research has discovered only two cases addressing the issue, and those cases are contrary to Workroom and Technichem's argument. *See Del Raine v. Carlson*, 153 F.R.D. 622, 628 (S.D.Ill.1994), *rev'd in part and vac. in part on other grounds*, 77 F.3d 484, 1996 WL 47451 (7th Cir.1996). In dicta, *Del Raine* states that the addition of new parties in an amended complaint initiates a new 120–day timetable as to the added parties. *See id.* For this proposition, *Del*

*Raine* cites *Excalibur Oil, Inc. v. Gable*, 105 F.R.D. 543, 545 n. 3 (N.D.Ill.1985), which states the same rule in dicta, with no citation to authority.

The stated rule is correct, but the court will provide its own comprehensive analysis of the issue. The court phrases the issue as follows: Does the 120–day time period of Rule 4(m) run only once, from the filing date of the initial complaint, requiring all new parties to be added within this time? Or does the 120–day time period begin anew when the complainant obtains leave to add additional parties to the complaint? The court begins with a discussion of how the Federal Rules of Civil Procedure are to be interpreted.

■■ Generally, the Rules are given their plain meaning; if a Rule is clear and unambiguous the inquiry is complete. *See Business Guides, Inc. v. Chromatic Communications Ents.*, 498 U.S. 533, 540–541, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). If a Rule requires interpretation, a court may appropriately refer to the Advisory Committee Notes. *See* 4 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1029 p. 124–125 (West 1987 & Supp.1997). An individual Rule must be construed as part of a procedural system, and the court's interpretation of the Rules as a whole must further the just, speedy, and inexpensive determination of every action. *See id.* at 121–123. With that in mind, the court proceeds to analyze the above issue.

Rule 4(m) is ambiguous, at least as applied to this situation. The Rule provides for dismissal if the defendant is not served "within 120 days after the filing of the complaint...." The Rule does not make clear whether "the complaint" means the initial complaint, filed before a party seeks leave to amend, or whether "the complaint" can be construed to mean the amended complaint, with the new parties added.

The Advisory Committee Notes do not address this issue, although they do provide that the principles of Rule 4(m) "apply with equal force to defendants who may assert

---

**14.**  Additionally, the court notes that a plaintiff can state a claim for nuisance under a negligence theory. *See Tint v. Sanborn*, 211 Cal.App.3d 1225, 259 Cal.Rptr. 902 (1989).

claims against nonparties under Rule[ ] ... 14...."

Therefore, the court's inquiry must seek to construe Rule 4(m) as part of a procedural whole, and seek to promote the Federal Rules' goal of a just, speedy, and inexpensive resolution to actions.

In this situation, where a party has filed a third-party complaint, and has amended that complaint to add additional parties, the procedural whole includes Rules 14 and 15. Rule 14 provides in relevant part:

(a) When Defendant May Bring in Third Party. At any time after the commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claims against the third-party plaintiff.

Rule 15 provides in relevant part:

(a) Amendments.... [A] party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires.

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

....

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

(3) the amendment changes the party ... against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Viewing these rules as a procedural whole, the court finds that the interpretation of Rule 4(m) found in *Del Raine,* supra, is correct—when a party is given leave to amend a complaint to add new parties, Rule 4(m) provides that party with 120 days to serve the amended complaint. This conclusion is based on the following points.

First, neither Rule 14 nor Rule 15 impose any kind of time limit during which a party may add new parties to the action, as long as the party seeking to add new parties requests leave of court to do so.

Second, to accept Technichem and Workroom's argument would lead to an absurd interpretation of Rule 15(c)(3). "Rule 15(c) is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of ... claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1496 p. 64 (West 1990 & Supp.1997). Under Rule 15(c)(3), if an amendment changes a party, the amendment will relate back to the date of the original filing only if the transactions are similar and the party had notice of the amending party's claim within the 120–day period of Rule 4(m). Under Workroom and Technichem's argument, the amending party is *always* required to amend and serve the complaint on the new parties within 120 days of filing the original complaint. This means that the relation-back doctrine would only be of use to a party when the statute of limitations for a party's action expired between the beginning and the end of the 120–day period, and the amending party served the amended complaint on the new parties after the statute had already expired. This restrictive view of the relation-back doctrine is inconsistent with the court's duty to construe the Rules liberally, *see Rodgers v. Watt,* 722 F.2d 456, 459 (9th Cir.1983), and while such an interpretation may seem to lead to a speedy and inexpensive resolution for Workroom and Technichem, it is hardly just as to Merced Laundry. This court therefore holds Workroom and Technichem's interpretation of Rule 4(m) to

be incorrect, and the view expressed in *Del Raine,* supra, to be correct.

The court has examined the record and finds that Merced Laundry has complied with Rule 4(m). Merced Laundry filed its amended complaint against Workroom and Technichem on July 7, 1997. Technichem was served on July 8, 1997, and Workroom was served on July 21, 1997, both well within the 120–day period of Rule 4(m).[15]

### IV. *Conclusion*

In accordance with the foregoing, IT IS ORDERED that all claims of the Opposition against the Movants for contribution for City Response Costs, as defined above, be DISMISSED. The Opposition is denied leave to amend.

IT IS FURTHER ORDERED that Movants' motions for judgment on the pleadings be DENIED as to Merced Laundry's claim for Administrative Order Response Costs, and as to the Opposition's state-law equitable-indemnity claims.

---

**15.** The court makes no findings as to whether Merced Laundry's amended complaint will relate back to the filing of the original third-party complaint on January 25, 1993.