David BERG and Marge
Berg, Appellants,

v.

David and Tsukiko POPHAM, d/b/a Alla-
din Cleaners, and Norge Corporation,
and its successors in interest Magic
Chef Corporation, Maytag Corporation,
ABC Inc., ABC Co., and ABC Corp., Ap-
pellees.

No. S–10815.

Supreme Court of Alaska.

May 20, 2005.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellants.

Joseph R.D. Loescher, Hughes Thorsness Powell, Anchorage, and I. Franklin Hunsaker and Christopher Angius, Bullivant Houser Bailey, Portland, Oregon, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The Ninth Circuit has certified the following two questions to this court:

1. Alaska Statute section 46.03.822(a)(4), in contrast to 42 U.S.C. § 9607(a)(3), contains the word "or" preceding the phrase "by any other party or entity." In light of the inclusion of the word "or," does section 46.03.822(a)(4) require that a person own, possess, have "authority to control," or "have a duty to dispose of" the hazardous substance that is released, before that entity can be subject to arranger liability as is required under 42 U.S.C. § 9607(a)(3)?

2. If the answer to Question 1 is "no," may an entity be subject to arranger liability under Alaska Statute section 46.03.822(a)(4) if it manufactures, sells, and installs a useful product that, when used as designed, directs a hazardous substance into the city sewer system? [1]

Because we find that AS 46.03.822(a)(4) was intended to be more inclusive than its federal counterpart, we hold that the answer to the first question is "no," and the answer to the second question is "yes."

## II. FACTS AND PROCEEDINGS

David and Marge Berg owned and operated the "Boni–Park" laundry and dry cleaning business in Anchorage from 1972 until 1978. David and Tsukiko Popham purchased the business in 1978 and operated it until they resold the company to the Bergs in 1980.

---

1. *Berg v. Popham,* 307 F.3d 1028, 1029 (9th Cir.2002).

The Bergs owned and operated the business again until 1983, when they sold the business to the Jaeger family.

From the pleadings, it appears that Boni–Park was part of a franchise arrangement with the Norge Corporation, a manufacturer of dry cleaning equipment. According to the Bergs, a Norge dealer in Anchorage "designed the layout of the equipment and installed the equipment in accordance with Norge manuals and installation materials." The Bergs claim that Norge personnel visited Boni–Park "several times" to check whether "the facility was being run in accordance with Norge practices and procedures" and that these personnel assured them that "the Norge equipment, including the dry cleaning facilities, had been correctly installed and were being correctly operated."

The Norge dry cleaning equipment at Boni–Park used the hazardous substance Perchlorethylene (PCE or "Perc") as a cleaning solvent that was mixed with water during the dry cleaning process. A "water/Perc separator" was then used to recapture the PCE while the separated water was flushed through a drainage system into the local sewer lines. A vaporization process was also used periodically to cleanse any oil and dirt residue that had accumulated during recycling of the PCE. This vaporization process yielded a PCE-contaminated sludge, which was also flushed into the sewer lines. There is no allegation that the defendants provided PCE to Boni–Park, but only that they arranged for the disposal of waste byproducts generated by the dry cleaning process.

At some point, PCE escaped into the environment from Boni–Park's premises or from the sewer pipes leading from the property, perhaps through underground leaks. The Bergs assert that, throughout the time they owned and operated Boni–Park, they used and maintained the dry cleaning equipment exactly as specified by Norge, and that they "never spilled PCE." Because we do not address factual disputes in answering a certified question, we assume for the purposes of this decision that the Bergs are correct when they contend that the release of PCE could only have been "through the factory-designed, approved, and installed drain lines."

In 1987 or 1988 the State of Alaska discovered the presence of PCE in the soil near Boni–Park. The state notified the Bergs that they were "potentially responsible persons" (PRPs) under AS 46.03.822 ("section .822"), Alaska's version of the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").[2] Alaska Statute 46.03.822 makes the owners of a facility from which there is a release of a hazardous substance a class of PRPs, strictly liable to the state for the costs of cleanup and remediation.[3] The Bergs were compelled to pay into a cleanup fund with other PRPs as part of the remediation effort for this site. The Bergs sued their insurer to obtain these funds. Section .822 also allows PRPs to obtain damages or contribution from other parties who contributed to the release of the hazardous substance.[4] The Bergs' settle-

---

**2.** 42 U.S.C. §§ 9601–9675 (West 2004).

**3.** AS 46.03.822 states in relevant part:
(a) ... the following persons are strictly liable, jointly and severally, for damages, for the costs of response, containment, removal, or remedial action incurred by the state, a municipality, or a village, and for the additional costs of a function or service, including administrative expenses for the incremental costs of providing the function or service, that are incurred by the state, a municipality, or a village, and the costs of projects or activities that are delayed or lost because of the efforts of the state, the municipality, or the village, resulting from an unpermitted release of a hazardous substance or, with respect to response costs, the substantial threat of an unpermitted release of a hazardous substance:
....

(2) the owner and the operator of a vessel or facility, from which there is a release, or a threatened release that causes the incurrence of response costs, of a hazardous substance[.]

**4.** AS 46.03.822(j) provides:
A person may seek contribution from any other person who is liable under (a) of this section during or after a civil action under (a) of this section. Actions under this subsection shall be brought under the Alaska Rules of Civil Procedure and are governed by state law. In resolving claims for contribution under this section, the court may allocate damages and costs among liable parties using equitable factors determined to be appropriate by the court. This subsection does not diminish the right of a person to bring an action for contribution in the absence of a civil action under (a) of this section.

ment with their insurer allowed the insurer to "seek contribution, indemnity, or similar relief from any responsible parties."

After allegedly incurring over $1 million in costs associated with the PCE cleanup, the Bergs sought contribution from the Maytag Corporation and Norge's other successors-in-interest (hereinafter referred to collectively as Maytag). They sued under a theory of so-called "arranger liability" under AS 46.03.822(a)(4) or U.S.C. § 9607(a)(3). Maytag removed the case to the federal district court, which granted in part Maytag's motion to dismiss because it held that arranger liability was inapplicable to Maytag under CERCLA or section .822.[5] On appeal to the Ninth Circuit, the Bergs did not contest the dismissal of their CERCLA claim, but they argued that the district court erroneously interpreted section .822's arranger liability provision.[6] The Ninth Circuit certified the two questions above to clarify Alaska law on this issue.[7]

### III. STANDARD OF REVIEW

■■■ In deciding a question of law upon certification from another court under Appellate Rule 407(a), we must "stand in the shoes of the certifying court," yet exercise our independent judgment.[8] A certified question necessarily involves determinative questions of Alaska law for which there is no controlling precedent.[9] Therefore, we must select the rule of law that is most persuasive in light of precedent, reason, and policy.[10]

### IV. DISCUSSION

#### A. The First Certified Question

The first certified question asks whether, considering the slight difference between the language of section .822 and CERCLA, a person or entity must own, possess, have "authority to control," or have a "duty to dispose of" a hazardous substance in order to

be susceptible to "arranger liability" under AS 46.03.822(a)(4). The meaning of this provision is a question of first impression.

CERCLA imposes strict liability on:

any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and . . . [11] from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance[.] [12]

By contrast, AS 46.03.822(a)(4) imposes strict liability on:

any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by the person, other than domestic sewage, *or* by any other party or entity, at any facility or vessel owned or operated by another party or entity and containing hazardous substances, from which there is a release, or a threatened release that causes the incurrence of response costs, of a hazardous substance[.]

(Emphasis added.)

Both parties acknowledge that CERCLA is the source of section .822's so-called "arranger liability" provision, but they differ on how closely section .822's meaning was meant to track that of CERCLA. While 42 U.S.C. § 9607(a)(3) and AS 46.03.822(a)(4) contain nearly identical wording, the Ninth Circuit has noted a small but potentially pivotal difference between the two provisions. Alaska's legislature added the word "or" to

---

5. *Berg,* 307 F.3d at 1029–30.

6. *Id.* at 1030.

7. *Id.* at 1029, 1031–32.

8. *FDIC v. Laidlaw Transit, Inc.,* 21 P.3d 344, 346 (Alaska 2001).

9. *Id.*

10. *Kallstrom v. U.S.,* 43 P.3d 162, 165 (Alaska 2002).

11. 42 U.S.C. § 9607(a)(3).

12. 42 U.S.C. § 9607(a)(4).

section .822 before "by any other party or entity."

The parties devoted much of their briefing to debating the significance of this difference. Maytag argues that the missing "or" in CERCLA is merely the result of sloppy drafting, and should be read into the provision by common sense. As the words of the two provisions are nearly identical, Maytag urges us to interpret subsection .822(a)(4) as imposing the same thing as subsection 9607(a)(3): strict liability for anyone who arranged for disposal or treatment of a hazardous substance that he owned or possessed. By arguing that the arranger liability provisions of CERCLA and section .822 are worded essentially identically, Maytag implies that federal CERCLA case law should be strong persuasive authority as to the interpretation of section .822's arranger liability. Maytag then points to federal cases that it believes would not support arranger liability here.

The Bergs argue that federal law is essentially different from state law because of their linguistic dissimilarities, and that Alaska's statute is broader than CERCLA, creating arranger liability for "any person who ... arranged ... for ... treatment of hazardous substances, **owned or possessed by the person ... or by any other party or entity....**" (Emphasis added.) The Bergs

contend that federal cases are of little help in interpreting section .822.

■ While federal case law interpreting a federal statute does not control our decision in interpreting a state statute, the Alaska legislature intended that CERCLA be used as a framework for interpreting section .822.[13] Accordingly, we look first to the federal cases for guidance. Although CERCLA does not define the term "arranged," federal courts have established basic rules for determining arranger liability. The Supreme Court has noted that Congress intended that CERCLA contain a "sweeping" remedy for hazardous waste contamination.[14] Other federal courts have noted that a broad construction of CERCLA's "arranged for" clause is consistent with Congress's overall purpose in enacting CERCLA[15] or have interpreted arranger liability liberally, in light of CERCLA's " 'overwhelmingly remedial scheme.' "[16] The all-inclusive phrase, "by contract, agreement, or otherwise," following the word "arranged" further indicates the broad potential scope of this provision.[17] In determining arranger liability, federal courts "look beyond the defendant's characterization of the transaction at issue,"[18] and instead examine "the facts of each individual case."[19]

Our review of the federal cases,[20] however, has disclosed no federal decision involving

**13.** *See* Bill Review letter from Douglas B. Baily, Attorney General, to Governor Steve Cowper on H.B. 68 (May 11, 1989), in Alaska State Archives, Series 1185, Record Group 91, Box No. 7892, File No. 883–89–0039.

**14.** *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 21, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (plurality opinion) (*overruled on other grounds by Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)).

**15.** *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 676 (3d Cir.2003).

**16.** *U.S. v. Vertac Chem. Corp.*, 966 F.Supp. 1491, 1501 (E.D.Ark.1997) (quoting *U.S. v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1381 (8th Cir. 1989)).

**17.** *See Morton*, 343 F.3d at 676.

**18.** *Id.* at 677.

**19.** *Concrete Sales & Servs., Inc. v. Blue Bird Body Co.*, 211 F.3d 1333, 1336 (11th Cir.2000).

**20.** The Ninth Circuit demands "actual exercise of control" by someone within a defendant entity, *U.S. v. Shell Oil Co.*, 294 F.3d 1045, 1058 (9th Cir.2002), because "[n]o court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue." *Id.* at 1058 (quoting *U.S. v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432, 1451 (E.D.Cal.1995)). The Second Circuit has suggested that "actual involvement in the decision to dispose of waste," *Gen. Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2d Cir. 1992), is sufficient. *Id.* at 286–87. The Seventh Circuit imposes liability if a defendant intended to arrange for the disposal or treatment of the harmful substance, *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir.1993), while the Sixth Circuit looks at whether there is a contract or agreement or if the defendant has taken any "affirmative acts" to dispose of the hazardous substance. *U.S. v. Cello–Foil Prods., Inc.*, 100 F.3d 1227 (6th Cir.1996). The Sixth Circuit explained that an intent-based standard of liability does not contradict CERCLA's strict liability. *Id.*

facts truly analogous to those of the present case.[21] And while Alaska law is generally modeled on CERCLA, it is clear that there are differences between the two statutes in several respects. We thus turn to a closer inspection of the two statutory schemes,[22] with special attention to the text and legislative history of section .822.

■ Neither AS 46.03.822(a)(4) nor CERCLA defines the phrase "arranged for." However, there is an important difference between section .822 and CERCLA. While CERCLA lists four classes of persons potentially responsible for the release of hazardous substances, subsection .822(a) lists five. Those potentially responsible under § 9607(a) are: (1) the owner and operator of a vessel or a facility from which hazardous substances were released; (2) the owner or operator of a facility where hazardous substances were disposed of, at the time of disposal; (3) arrangers; and (4) transporters of hazardous substances.[23] Subsection .822(a)(1) adds to CERCLA's classes of PRPs "the owner of, and the person having control over, the hazardous substance at the time of the release." Our principles of statutory construction " 'militate against interpreting a statute in a manner that renders other provisions meaningless.' " [24] Thus, in interpreting subsection .822(a)(4), we cannot disregard subsection .822(a)(1) or render it redundant. Because Alaska treats as PRPs those who have ownership and control of a hazardous substance as well as those who arrange for its disposal, these classifications cannot be synonymous.

This difference between Alaska and federal law reflects our legislature's intent to expand liability beyond CERCLA's standards, even if section .822's legislative history is silent as to the interpretation and application of arranger liability specifically. While section .822 was modeled on CERCLA generally, it was revised in the months following the Exxon Valdez catastrophe, so its scope would be broader than that of its forebear.[25] One commentator noted that, under the revised section .822, persons merely responsible for managing or handling a hazardous substance could face liability for its release even after the substance has left their control.[26]

■ In light of the textual distinctions between the federal and state statutes, and based upon our review of the legislative history of section .822, we adopt a standard of arranger liability that is broader than that of the Ninth Circuit. Like most courts assigning arranger liability under CERCLA, we

at 1232. The defendant's state of mind only determines whether he "arranged" for disposal or treatment. *Id.* Once the intent to arrange is determined, that arranger is strictly liable for any harms resulting from the arrangement. *Id.* The Eleventh Circuit is flexible and will consider several factors, none of which is dispositive, including the intent to dispose of the substance at the time of the transaction, whether the defendant "made the 'crucial decision' to place hazardous substances in the hands of a particular facility," and whether the defendant knew of the disposal. *Concrete Sales & Servs., Inc.,* 211 F.3d at 1336–37 (internal citations omitted).

**21.** The cases cited by Maytag involve factual settings substantially different from the instant dispute: *Iron Mountain Mines, Inc.,* 881 F.Supp. at 1435–37, 1449, 1451–52 (government's construction and management of dams regulating flow of waterways polluted by mining runoff does not constitute "arranging for the disposal" of runoff); *Gen. Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 283–88 (2d Cir.1992) (oil companies did not arrange for disposal of waste oil from affiliated service stations, where oil companies had supplied fresh oil, equipment, and inspection services, but did not require service stations to collect and resell waste oil); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 652–56 (N.D.Ill.1988) (defendant who "designed, constructed, and installed" chemical system in wood treatment plant but "did not decide how the hazardous substance would be disposed of after its use" did not arrange for disposal of chemicals).

**22.** *See Flisock v. State, Div. of Ret. & Benefits,* 818 P.2d 640, 643 (Alaska 1991) (holding that statutory interpretation begins with language of statute).

**23.** 42 U.S.C. § 9607(a) (West 2004).

**24.** *Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.,* 991 P.2d 202, 208 (Alaska 1999) (quoting *M.R.S. v. State,* 897 P.2d 63, 66 (Alaska 1995)).

**25.** *See* Bill Review letter, *supra,* n. 14.

**26.** Committee Minutes, Senate Judiciary Committee hearing on H.B. 68 (May 2, 1989) (comments of Dennis Kelso, Commissioner of Department of Environmental Conservation).

hold that arranger liability under AS 46.03.822(a)(4) requires some "actual involvement in the decision to dispose of waste"[27] that was substantial or integral. However, we note that actual involvement in a decision to dispose of waste can encompass involvement in deciding *how* to dispose of waste or in facilitating such disposal. Involvement in deciding how to dispose of waste can, in turn, include actions such as designing, installing, or connecting a system that disposes of waste on behalf of a third party.

Our interpretation of AS 46.03.822(a)(4) finds support in a state case with facts similar to this one, *R.R. Street & Co., Inc. v. Pilgrim Enterprises, Inc.*[28] Pilgrim was a dry cleaner seeking to recover PCE cleanup costs from Street, its dry-cleaning equipment supplier.[29] The Texas appellate court held that Street was an arranger under the Texas equivalent of CERCLA.[30] The court noted that the federal circuit courts "agree that there must be a 'nexus' between the potentially responsible party and the disposal of the hazardous substance," and that, "[g]enerally, the nexus must be premised on the conduct of the party in respect to the disposal of the hazardous waste."[31] As the court summarized, "[a]lmost all courts that have held defendants liable as arrangers have found that the defendant had some actual involvement in the decision to dispose of

waste."[32] Because the defendant "gave direct advice . . . as to how to dispose of waste containing PCE," it thus "had some actual involvement in the decision to dispose of the waste."[33]

We find the reasoning of the Texas court to be persuasive, particularly since the facts of this case are very similar. Like the supplier in *R.R. Street,* Norge visited and inspected the Bergs' business and provided service and technical advice.[34] While Norge did not actually conduct tests involving PCE, it did connect the dry cleaning equipment to the plumbing system. We apply the "actual involvement" standard articulated in *R.R. Street* because this standard conforms with the intent of the Alaska legislature when it revised section .822 and broadened arranger liability.

## B. The Second Certified Question

Having decided that a person need not own, possess, have authority to control, or have a duty to dispose of a hazardous substance in order to be subject to arranger liability under section .822, we turn next to the second certified question. This question asks whether a person or entity lacking ownership, possession, authority, or a duty to dispose can be liable for making, selling, or installing a useful product that purposely directs hazardous substances into the environment.[35]

27. *See Gen. Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 286 (2d. Cir.1992) (noting that almost all courts assigning arranger liability require actual involvement in decision to dispose of waste).

28. 81 S.W.3d 276 (Tex.App.2001). In addition to relying on *R.R. Street,* the Bergs also attempt to argue that *Cipri v. Bellingham Frozen Foods, Inc.,* 235 Mich.App. 1, 596 N.W.2d 620 (1999), weighs in their favor as well. However, *Cipri* does not significantly widen CERCLA-type arranger liability beyond the federal case law. Instead, it seems to follow the federal cases looking at the intent and primary purpose behind a transaction to determine if it was an arrangement for disposal of hazardous substances. *Cipri,* 596 N.W.2d at 626–27. More importantly, *Cipri's* facts are not analogous to the present case. The defendant in *Cipri* not only arranged for the disposal of the physical substances that damaged the plaintiff's property, but it actually produced, owned, and disposed of the substances. *Cipri v. Bellingham Frozen Foods, Inc.,* 213 Mich.App. 32, 539 N.W.2d 526, 527–28 (1995).

29. *Street,* 81 S.W.3d at 284–85.

30. The court noted that no prior Texas case had discussed arranger liability under that state's version of CERCLA. Because the Texas statute had wording that was substantially similar to CERCLA, the court stated it would "presume, absent some indication to the contrary, that the legislature intended to adopt the construction placed on that wording by the federal courts." *R.R. Street & Co., Inc.,* 81 S.W.3d at 290.

31. *Id.* at 291.

32. *Id.* (quoting *Gen. Elec. Co.,* 962 F.2d at 286).

33. *Id.* at 295.

34. *Street,* 81 S.W.3d at 284.

35. The parties did not brief this issue, but instead devoted their attention to the first certified question and other issues not raised by the Ninth Circuit.

■ Federal courts have limited arranger liability by reading "arranged" in the context of "for disposal or treatment." They have consistently held that "a manufacturer who does nothing more than sell a useful, albeit hazardous, product to an end user" has not arranged for disposal of a hazardous substance.[36] Under this "useful product" exception, even a company distributing a hazardous chemical that later causes environmental harm can avoid liability as an arranger under CERCLA.[37] In classifying useful products, federal courts have recognized several basic standards. A newly manufactured chemical incorporated into other downstream products is considered "useful;" thus, "[s]elling hazardous substances as part of a complete, useful product does not generally make a party a responsible person."[38] Similarly, used substances or products containing hazardous materials are considered useful and are not "disposed of" when sold for reuse.[39] Even arranging the sale of hazardous byproducts of other manufacturing processes can fall within the "useful" exception to CERCLA liability if such substances are themselves intended for other productive uses.[40] The key inquiry is often whether the alleged arranger's intent was to dispose of waste or to sell a product.[41]

Essentially, the second certified question asks whether AS 46.03.822(a)(4) includes CERCLA's "useful product" exception to arranger liability. We have never addressed that doctrine, either in reference to CERCLA or in applying this state's own environmental laws. But the Alaska legislature clearly intended section .822 to contain some exception from arranger liability for useful products. Legislators voiced concern that if section .822 was too broad, it would lead to exorbitant insurance costs and deter commerce, particularly the supply of goods and services to rural communities.[42] The legislature enacted a law specifically designed to avoid imposing liability on "virtually everyone in the chain of commerce who had ever handled [a released hazardous] substance, even if that person had absolutely nothing to do with the release."[43] Thus, section .822 represents a compromise between the goal of controlling hazardous waste and the desire to ensure that useful products are available to consumers.[44]

■ While many federal cases discuss the useful product exception, none of the cases cited by Maytag, nor any that we could find, applied the doctrine to shield a party whose products or services were known to facilitate another party's disposal of hazardous materials; instead, most federal cases

**36.** *See, e.g., City of Merced v. Fields,* 997 F.Supp. 1326, 1332 (E.D.Cal.1998) (citing *3550 Stevens Creek Assocs. v. Barclays Bank of California,* 915 F.2d 1355, 1361–62 (9th Cir.1990)) (noting that the Second, Fifth, Seventh, and Eleventh Circuits have ruled similarly). *See also U.S. v. Union Corp.,* 277 F.Supp.2d 478, 490 (E.D.Pa.2003) (noting that the Fourth, Sixth, Ninth, and Eleventh Circuits are in agreement).

**37.** In *City of Merced* the court indicated that the sale of PCE alone was insufficient to impose liability under 42 U.S.C. § 9607(a). 997 F.Supp. at 1332.

**38.** *U.S. v. Petersen Sand & Gravel, Inc.,* 806 F.Supp. 1346, 1354 (N.D.Ill.1992).

**39.** *Pneumo Abex Corp. v. High Point, Thomasville & Denton R. Co.,* 142 F.3d 769, 775 (4th Cir. 1998) (sale of used wheel bearings to foundry for recycling was sale of useful product, not disposal).

**40.** *See, e.g., Petersen Sand & Gravel, Inc.,* 806 F.Supp. at 1354–55 (applying useful product exception to sale of fly ash for use in road construction).

**41.** *New York v. Solvent Chem. Co., Inc.,* 225 F.Supp.2d 270, 281–82 (W.D.N.Y.2002). *See also Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313, 1319 (11th Cir.1990) (upholding summary judgment for defendant transformer manufacturers where plaintiff failed to show sale of transformers was attempt to dispose of hazardous chemicals contained within transformers).

**42.** Committee Minutes, Senate Special Committee on Oil and Gas hearing on H.B. 68 (April 12, 1989); Committee Minutes, Senate Judiciary Committee hearing on H.B. 68 (May 2, 1989).

**43.** Floor Memo for H.B. 68, Senate Judiciary Committee (undated), in Alaska State Archives, Box # 17568.

**44.** Committee Minutes, Senate Judiciary Committee hearing on H.B. 68 (May 2 & 4, 1989).

apply the exception to shield suppliers of tangible physical goods put to further productive use by their recipients.[45] But this case deals with machines and services specifically designed to release hazardous substances as part of their essential function. As we noted above, the water/Perc separator flushed waste water into sewer lines, and post-vaporization PCE-contaminated sludge was also flushed into sewer lines. Thus, we are not persuaded that the useful product exception to section .822 liability is applicable in this case.

Furthermore, the history of section .822 shows that Alaska's useful product exception is narrower than CERCLA's. The legislature noted that it would "not go nearly as far as CERCLA in limiting the liability of persons dealing in useful substances." [46] Specifically, section .822's sponsors noted that, while CERCLA was the model for section .822 generally, CERCLA is directed only at "wastes," while section .822 was "drafted in such a way that all harmful substances are treated the same." [47]

Thus, while we recognize a "useful product" exception to arranger liability under section .822, this exception does not protect from arranger liability under AS 46.03.822(a)(4) an entity manufacturing, selling, or installing a useful product that is intended to direct a hazardous substance into a city sewer system.

### C. The Bergs' Other Contribution Claims Need Not Be Addressed.

The Bergs also argue that the "overriding issue" in this case is whether they can maintain a state contribution claim under AS 46.03.828, AS 09.16.010–040, or AS 09.17.080 in addition to section .822. Because we were asked by the Ninth Circuit to resolve only two questions concerning the proper interpretation of AS 46.03.822, we decline the invitation to determine whether the Bergs have a claim for contribution under other sections of the Alaska Statutes. While we may reformulate a question as we see fit,[48] we decline to address issues not raised by the certifying court.[49]

### V. CONCLUSION

1. Alaska Statute 46.03.822(a)(4) does not require that a person own, possess, have authority to control, or a duty to dispose of a hazardous substance for that person to face arranger liability for the release of that substance. Rather, under AS 46.03.822(a)(4), any person who was actually involved in a decision to dispose of, or a decision on how to dispose of, a hazardous substance may be liable.

2. The provider of a "useful product" is not automatically liable under AS 46.03.822(a)(4) for the subsequent release of a hazardous substance related to that product. But an entity may be liable if it manufactures, sells, or installs a useful product that is intended to direct, and when used as designed, directs a hazardous substance into a city sewer system.

---

**45.** *See e.g., Florida Power & Light Co.*, 893 F.2d at 1319 (upholding summary judgment for defendant transformer manufacturers where plaintiff failed to show sale of transformers was attempt to dispose of hazardous chemicals contained within transformers); *U.S. v. Consol. Rail Corp.*, 729 F.Supp. 1461, 1469–73 (D.Del.1990) (no arranger liability for defendant who shipped waste coal tar to be used for pressure treating wood where defendants did not make "crucial decision to dispose of hazardous substances" or allow third parties to do so in their stead); *City of Merced v. Fields*, 997 F.Supp. 1326, 1332 (E.D.Cal.1998) (manufacturer cannot be liable under CERCLA for mere sale of "useful chemical" to user).

**46.** Floor Memo for H.B. 68, Senate Judiciary Committee (undated), in Alaska State Archives, Box # 17568.

**47.** *See* comments of Senator Jan Faiks, Committee Minutes, Senate Judiciary Committee hearing on H.B. 68 (May 2, 1989).

**48.** *Victor v. State Farm Fire & Cas. Co.*, 908 P.2d 1043, 1044 n. 2 (Alaska 1996) (citing 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 4248, at 177–178 (1988)).

**49.** *See FDIC v. Laidlaw Transit Inc.*, 21 P.3d 344, 349 n. 19 (Alaska 2001) (declining to address issues not raised by certifying court).