**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID BERG; MARGE BERG,
      *Plaintiffs-Appellants,*

v.

DAVID POPHAM; TSUKIKO POPHAM,
            *Defendants,*

and

NORGE CORPORATION, and its
successors in interest; MAGIC CHEF
CORPORATION; MAYTAG
CORPORATION; ABC INC.; ABC
CO.; ABC CORP.,
        *Defendants-Appellees.*

No. 01-35807

D.C. No.
CV-00-00151-JWS

OPINION

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued August 7, 2002
Submission Withdrawn October 4, 2002
Resubmitted June 16, 2005
Anchorage, Alaska

Filed June 24, 2005

Before: Betty B. Fletcher, Arthur L. Alarcón, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Alarcón

7531

**COUNSEL**

Michael W. Flanigan, Walther & Flanigan, Anchorage, Alaska, for the plaintiffs-appellants.

I. Franklin Hunsaker, Bullivant Houser Bailey, Portland, Oregon, for the defendants-appellees.

**OPINION**

ALARCÓN, Senior Circuit Judge:

This matter is before us to review the Alaska state law questions presented by the parties to this dispute.[1] This appeal

---

[1]In its notice of removal, Maytag alleged that the district court had federal question jurisdiction pursuant to 28 U.S.C. § 1331, and diversity juris-

presents a novel issue under Alaska law, i.e., is an entity subject to liability under Alaska Statute ("AS") § 46.03.822(a)(4) if it manufactured or sold a useful product that, when used as designed and installed by the manufacturer, releases hazardous substances.

The Maytag Corporation ("Maytag") moved to dismiss the second amended complaint filed by David and Marge Berg ("the Bergs") for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Relying solely on federal decisions interpreting the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, Maytag argued that it was not liable under CERCLA or its Alaska counterpart, AS § 46.03.822(a)(4). The district court dismissed the second amended complaint without citing any decision of the Alaska Supreme Court addressing the issue before this court.

The Alaska Supreme Court accepted our request for certification for its interpretation of Alaska law. In its response to our request, the Alaska Supreme Court held that a manufacturer of a useful product can be held liable under AS § 46.03.822(a)(4) if it was intended to direct a hazardous substance into a city sewer system. *Berg v. Popham*, No. S-10815, 2005 WL 1189660, at *7 (Alaska May 20, 2005); ___ P.3d ___. Accordingly, we vacate and remand that portion of the district court's judgment on the pleadings regarding Maytag's potential liability under AS § 46.03.822(a)(4).

diction pursuant to 28 U.S.C. 1332(a). In its order dismissing the second amended complaint the district court held that it had supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). It stated that it could not determine if diversity existed between the parties because "the present record does not afford the court with an adequate basis to evaluate this contention." The Bergs have not challenged the district court's subject matter jurisdiction. The district court had subject matter jurisdiction over the state law claims whether or not the parties were diverse because the Bergs also asserted a federal question in their complaint. 28 U.S.C. § 1367(a).

I

The Bergs filed this action in the Superior Court for the State of Alaska alleging, *inter alia*, that Maytag was liable for contribution pursuant to CERCLA and AS § 46.03.822(a)(4) for a portion of the costs incurred in remediation resulting from the discovery of percholoroethylene ("PCE") emanating from sewer lines in the ground connected to the Bergs' dry-cleaning business.

Maytag removed the action to federal court, alleging federal question and diversity jurisdiction. Maytag moved to dismiss the Bergs' first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Bergs moved for leave to amend their complaint. The district court granted the Bergs leave to file a second amended complaint.

The Bergs alleged in their second amended complaint that they owned a dry-cleaning business in Anchorage, Alaska, from 1972 through 1978 and again from 1980 through 1983. The dry cleaning equipment was purchased from Norge Corporation ("Norge") before 1972. Maytag is Norge's successor in interest.[2] Norge recommended that the Bergs use PCE in the equipment as part of the dry-cleaning process. Norge designed the layout of the equipment and installed the dry-cleaning equipment and a water and PCE separator system that "facilitated spillage, leakage and direction of [PCE] into the city sewer system."

In 1991, highway construction workers for the State of Alaska discovered PCE in the soil near the Bergs' former dry-cleaning business. The State issued notices and filed liens on the Bergs' assets to create a pool of funds to be used in decontamination efforts.

---

[2]Maytag denies that it is Norge's corporate successor and reserves the right to litigate this issue at trial. However, for purposes of reviewing the merits of its motion to dismiss and motion for judgment on the pleadings, Maytag does not dispute that it is Norge's successor in interest.

Maytag moved to dismiss the Bergs' second amended complaint for failure to state a claim upon which relief can be granted. The district court granted Maytag's motion, in part, concluding that it could not be liable as an arranger or transporter under CERCLA or AS § 46.03.822(a)(4). Subsequently, the court granted Maytag's motion for judgment on the pleadings regarding the Bergs' remaining state-law claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Bergs timely filed a notice of appeal from the district court's final judgment. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II

The Bergs do not appeal from the portion of the district court's judgment dismissing their CERCLA claim. They assert, however, that the district court erred in dismissing their claim for contribution against Maytag under AS § 46.03.822(a)(4) because "the plain language of the Alaska 'arranger' language . . . allows for the present suit, since Norge did by contract arrange for disposal of PCE through the piping system it installed at the Bergs' dry cleaning plant, by and through the Norge dry cleaning machines it installed plumbed to the sewers."

We review "de novo a district court's dismissal of a complaint: for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) . . . and for judgment on the pleadings pursuant to Rule 12(c)." *Arrington v. Wong*, 237 F.3d 1066, 1069 (9th Cir. 2001). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002) (quotations and citation omitted).

**[1]** AS § 46.03.822(a) imposes strict liability for damages and "the costs of response, containment, removal, or remedial

action incurred" by the State of Alaska on persons responsible for "an unpermitted release of a hazardous substance." The statute also authorizes private parties to file an action to "seek contribution from any other person who is liable" under the statute. AS § 46.03.822(j). Persons subject to the statute's joint and several liability scheme include owners and operators of facilities "from which there is a release . . . of a hazardous substance." AS § 46.03.822(a)(2). The Bergs, as former owners and operators of the dry-cleaning business, are subject to liability under this subsection and are entitled to bring an action for contribution against other responsible parties pursuant to AS § 46.03.822(j).

[2] In addition to imposing liability on "owners" and "operators," AS § 46.03.822(a)(4) imposes liability on persons who "arranged" for the disposal of hazardous waste. "Arrangers" are defined as

> any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by the person, other than domestic sewage, *or by any other party or entity*, at any facility or vessel owned or operated by another party or entity and containing hazardous substances, from which there is a release, or a threatened release that causes the incurrence of response costs, of a hazardous substance[.]

§ 46.03.822(a)(4) (emphasis added).

[3] CERCLA, by contrast, defines the liability of a person who arranges the release of a hazardous substance as

> any person who by contract, agreement, or otherwise *arranged for disposal or treatment*, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such

person, *by any other party or entity*, at any facility
or incineration vessel owned or operated by another
party or entity and containing such hazardous sub-
stances[.]

42 U.S.C. § 9607(a)(3) (emphasis added). Unlike the Alaska
statute, § 9607(a)(3) does not contain the disjunctive "or"
before the words "by any other party or entity."

The Bergs alleged in their second amended complaint that
Maytag installed defective dry-cleaning equipment at the
Bergs' dry-cleaning business that included a "still system
[that] when used as directed spilled [PCE] into the city sewer
system[ ]" and a "water/[PCE] separator system that when
used as directed, spilled [PCE] into the city sewer system."
The Bergs argue that the district court erred in determining
that these allegations were insufficient to state a claim for
arranger liability under AS § 46.03.822(a)(4).

In construing CERCLA, we have recognized that " '[n]o
court has imposed arranger liability on a party who never
owned or possessed, and never had any authority to control or
duty to dispose of, the hazardous materials at issue.' " *United
States v. Shell Oil Co.*, 294 F.3d 1045, 1058 (9th Cir. 2002)
(quoting *United States v. Iron Mountain Mines, Inc.*, 881 F.
Supp. 1432, 1451 (E.D. Cal. 1995)). Maytag contends that it
cannot be liable as an arranger because the Bergs have not
alleged that it owned or possessed the hazardous substance
that was released into the sewer system.

Because we found no controlling precedent in decisions of
the Alaska Supreme Court interpreting the scope of the word
"arranged" as used in AS § 46.03.822(a)(4), we certified the
following two questions to the Alaska Supreme Court: (1)
"Alaska Statute section 46.03.822(a)(4), in contrast to 42
U.S.C. § 9607(a)(3), contains the word 'or' preceding the
phrase 'by any other party or entity.' In light of the inclusion
of the word 'or,' does section 46.03.822(a)(4) require that a

person own, possess, have 'authority to control,' or 'have a duty to dispose of' the hazardous substance that is released, before that entity can be subject to arranger liability as is required under 42 U.S.C. § 9607(a)(3)?;" and (2) "[i]f the answer to Question 1 is 'no,' may an entity be subject to arranger liability under Alaska Statute section 46.03.822(a)(4) if it manufactures, sells, and installs a useful product that, when used as designed, directs a hazardous substance into the city sewer system?"

In answering our first certified question, the Alaska Supreme Court noted that "the Alaska legislature intended that CERCLA be used as a framework for interpreting section .822." *Berg*, 2005 WL 1189660, at *3 (citing Bill Review letter from Douglas B. Baily, Attorney General, to Governor Steve Cowper on H.B. 68 (May 11, 1989), in Alaska State Archives, Series 1185, Record Group 91, Box No. 7892, File No. 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). The Alaska Supreme Court explained that its review of federal cases, however, "disclosed no federal decision involving facts truly analogous to those of the present case." *Berg*, 2005 WL 1189660, at *4. The Supreme Court of Alaska noted that, although Alaska law is generally modeled on CERCLA,

> there is an important difference between section .822 and CERCLA. While CERCLA lists four classes of persons potentially responsible for the release of hazardous substances, subsection .822(a) lists five. Those potentially responsible under § 9607(a) are: (1) the owner and operator of a vessel or a facility from which hazardous substances were released; (2) the owner or operator of a facility where hazardous substances were disposed of, at the time of disposal; (3) arrangers; and (4) transporters of hazardous substances. Subsection .822(a)(1) adds to CERCLA's classes of PRPs "the owner of, and the person having control over, the hazardous substance at the time of the release.

*Id.* (citing 42 U.S.C. § 9607(a) (West 2004)).

**[4]** The Alaska Supreme Court explained that, in interpreting AS § 46.03.822(a)(4), "we cannot disregard subsection .822(a)(1) or render it redundant. Because Alaska treats as PRPs those who have ownership and control of a hazardous substance as well as those who arrange for its disposal, these classifications cannot be synonymous." *Id.* The Alaska Supreme Court explained that

> [t]his difference between Alaska and federal law reflects our legislature's intent to expand liability beyond CERCLA's standards, even if section .822's legislative history is silent as to the interpretation and application of arranger liability specifically. While section .822 was modeled on CERCLA generally, it was revised in the months following the Exxon Valdez catastrophe, so its scope would be broader than that of its forebear . . .
>
> In light of the textual distinctions between the federal and state statutes, and based upon our review of the legislative history of section .822, we adopt a standard of arranger liability that is broader than that of the Ninth Circuit. Like most courts assigning arranger liability under CERCLA, we hold that arranger liability under AS 46.03.822(a)(4) requires some "actual involvement in the decision to dispose of waste" that was substantial or integral. However, we note that actual involvement in a decision to dispose of waste can encompass involvement in deciding *how* to dispose of waste or in facilitating such disposal. Involvement in deciding how to dispose of waste can, in turn, include actions such as designing, installing, or connecting a system that disposes of waste on behalf of a third party.

*Id.* at *4 (quoting *Gen. Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 & n. 27 (2d Cir. 1992) (per curiam)).

**[5]** In interpreting AS § 46.03.822(a)(4), the Alaska Supreme Court relied upon *R.R. Street & Co. v. Pilgrim Enterprises, Inc.*, 81 S.W.3d 276 (Tex. Ct. App. 2001). In that matter, the Texas appellate court held that a dry-cleaning supplier was an arranger under the Texas equivalent of CERCLA because the defendant " 'gave direct advice . . . as to how to dispose of waste containing PCE,' " it thus " 'had some actual involvement in the decision to dispose of the waste.' " *Berg*, 2005 WL 1189660, at *5 (quoting *R.R. Street & Co.*, 81 S.W.3d at 295). In doing so, the Alaska Supreme Court noted:

> Like the supplier in *R.R. Street*, Norge visited and inspected the Bergs' business and provided service and technical advice. While Norge did not actually conduct tests involving PCE, it did connect the dry cleaning equipment to the plumbing system. We apply the "actual involvement" standard articulated in *R.R. Street* because this standard conforms with the intent of the Alaska legislature when it revised section .822 and broadened arranger liability.

*Berg*, 2005 WL 1189660, at *5 (citing *R.R. Street & Co.*, 81 S.W.3d at 284). The Alaska Supreme Court held:

> Alaska Statute 46.03.822(a)(4) does not require that a person own, possess, have authority to control, or a duty to dispose of a hazardous substance for that person to face arranger liability for the release of that substance. Rather, under 46.03.822(a)(4), any person who was actually involved in a decision to dispose of, or a decision on how to dispose of, a hazardous substance may be liable.

*Berg*, 2005 WL 1189660, at *7.

After answering our first certified question in the negative, the Alaska Supreme Court resolved our second certified question concerning whether a person or entity lacking ownership,

possession, authority, or a duty to dispose can be liable for making, selling, or installing a useful product that purposely directs hazardous substances into the environment. In answering this question, the Alaska Supreme Court first discussed the "useful product" exception, noting that "[federal courts] have consistently held that a manufacturer who does nothing more than sell a useful, albeit hazardous, product to an end user has not arranged for disposal of a hazardous substance." *Berg*, 2005 WL 1189660, at *5 (citations omitted) (internal quotations omitted). "[E]ven a company distributing a hazardous chemical that later causes environmental harm can avoid liability as an arranger under CERCLA." *Id.* "The key inquiry is often whether the alleged arranger's intent was to dispose of waste or to sell a product." *Id.* (citing *New York v. Solvent Chem. Co. Inc.*, 225 F. Supp. 2d 270, 281-82 (W.D.N.Y. 2002)).

The Alaska Supreme Court also stated:

> [T]he Alaska legislature clearly intended section .822 to contain some exception from arranger liability for useful products. . . . The legislature enacted a law specifically designed to avoid imposing liability on "virtually everyone in the chain of commerce who had ever handled [a released hazardous] substance, even if that person had absolutely nothing to do with the release."

*Berg*, 2005 WL 1189660, at *6 (quoting Floor Memo for H.B. 68, Senate Judiciary Committee (undated), in Alaska State Archives, Box #17568 (alteration in original)).

The Alaska Supreme Court noted, however, that none of the federal cases discussing the useful-product exception applied the doctrine to shield a party whose products or services were known to facilitate another party's disposal of hazardous materials.

[M]ost federal cases apply the exception to shield suppliers of tangible physical goods put to further productive use by their recipients. But this case deals with machines and services specifically designed to release hazardous substances as part of their essential function. As we noted above, the water/Perc separator flushed waste water into sewer lines, and post-vaporization PCE-contaminated sludge was also flushed into sewer lines. Thus, we are not persuaded that the useful product exception to section .822 liability is applicable in this case.

*Berg*, 2005 WL 1189660, at *6 (citation omitted).

**[6]** The Alaska Supreme Court concluded that "[t]he provider of a 'useful product' is not automatically liable under AS 46.03.822(a)(4) for the subsequent release of a hazardous substance related to that product. But an entity may be liable if it manufactures, sells, or installs a useful product that is intended to direct, and when used as designed, directs a hazardous substance into a city sewer system." *Id.* at *7.

**[7]** Applying the Alaska Supreme Court's interpretation of AS § 46.03.822(a)(4) to this matter, we conclude that the Bergs alleged sufficient facts to support a claim for arranger liability under AS § 46.03.822(a)(4). The Bergs alleged in their second amended complaint that Maytag recommended that the Bergs use PCE in the equipment as part of the dry-cleaning process, designed the layout of the equipment and installed the dry-cleaning equipment and a water and PCE separator system that "facilitated spillage, leakage and direction of [PCE] into the city sewer system." Accepting those allegations as true and construing them in the light most favorable to the Bergs, it does not appear beyond doubt that the Bergs can prove no set of facts in support of their claim that would entitle them to relief. *See Daniel*, 288 F.3d at 380 ("A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of the claim that would entitle it to relief."). Under the "actual involvement" approach adopted by the Alaska Supreme Court, the Bergs have sufficiently alleged a claim against Maytag for arranger liability under AS § 46.03.822(a)(4).

### III

The Bergs also contend that the district court erred in dismissing their state law claims for contribution, equitable apportionment, and implied indemnity, which the Bergs argue are viable statutory causes of action independent of their claim for contribution under AS § 46.03.822(a)(4). We disagree. Alaska law does not provide the Bergs a cause of action under any of these theories.

[8] The right to contribution in Alaska arises only by operation of statute. *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 436 (Alaska 1979). Along these lines, the citizens of Alaska, by ballot initiative, eliminated the statutory right to contribution for injuries occurring after March 5, 1989. *Benner v. Wichman*, 874 P.2d 949, 955-56 (Alaska 1994). The Bergs therefore cannot have a state law claim for contribution for injury occurring after this date. Prior to March 5, 1989, a contribution claimant was required to show that 1) the claimant and the contribution defendant are both tortfeasors who are joint and severally liable for the same injury, 2) the claimant has paid more than its pro rata share of the common liability, 3) the claimant has extinguished the contribution defendant's liability, and 4) if the liability is extinguished by settlement, the amount was reasonable. AS § 09.16.010; *Ogle v. Craig Taylor Equip. Co.*, 761 P.2d 722, 725-26 (Alaska 1988).[3] Here, at least one reason the Bergs' pre-1989 state law contribution claim fails is because they did not allege in their complaint that they have paid more than their pro rata share.

---

[3]The change in Alaska tort law enacted in 1986 that was at issue in *Ogle* is not relevant in the present case.

**[9]** The Bergs also lack a valid claim for equitable apportionment under AS § 09.17.080. Equitable apportionment allows defendants, even after the repeal of the UCTA, "to mitigate their damages by filing third-party claims against other potentially responsible persons." *Alaska Gen. Alarm, Inc. v. Grinnell*, 1 P.3d 98, 101 (Alaska 2000). Alaska Rule of Civil Procedure 14(c) establishes "the procedure that defendants could use for equitable apportionment of damages to third parties who had no direct liability to the defendant but were potentially responsible to the plaintiff." *Id.* Pursuant to Rule 14(c), a defendant may "add as a third-party defendant any person whose fault may have been a cause of the damages claimed by the plaintiff." The Bergs are not attempting to add Maytag as a third-party defendant in an existing lawsuit. Instead, the Bergs have filed a separate action for contribution. A separate action is not a way to seek equitable apportionment under Rule 14(c). The Bergs' claim for equitable apportionment therefore fails.

**[10]** The Bergs' claim for indemnity against Maytag also fails. The Bergs failed to allege in their complaint that Maytag expressly or impliedly agreed to indemnify them. "Express and implied contractual indemnity claims require proof of a contract to indemnify . . . ." *AVCP Reg'l Hous. Auth. v. R.A. Vranckaert Co. Inc.*, 47 P.3d 650, 655-56 (Alaska 2002). Additionally, to state a claim for recovery under an implied contractual indemnity theory, the Bergs were required to allege that Maytag's liability was extinguished. *Id.* at 658. The Bergs did not allege that Maytag's potential liability to the State of Alaska was extinguished.

IV

Finally, the Bergs argue that the district court abused its discretion in imposing sanctions against their attorney pursuant to 28 U.S.C. § 1927. Because parties lack standing to appeal an order imposing sanctions against their attorney, we

lack jurisdiction to review the award of sanctions. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998).

## *CONCLUSION*

We hold that the district court erred in determining that the Bergs' allegations that Maytag installed the dry-cleaning equipment that included a "still system [that] when used as directed spilled [PCE] into the city sewer system[ ]" and a "water/[PCE] separator system that when used as directed, spilled [PCE] into the city sewer system," were not sufficient to support a claim for arranger liability under AS § 46.03.822(a)(4). We agree with the district court that the Bergs' claims for contribution, equitable apportionment, and implied indemnity do not state a cause of action under Alaska law. We also decide that the Bergs lack standing to appeal the district court's order imposing sanctions against their attorney.

**VACATED** and **REMANDED** in part; **AFFIRMED** in part; **DISMISSED** in part. The parties shall bear their own costs on appeal.